UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| L.D.R., a minor by his mother and guardian, ROSHONDA R. WAGNER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:16-CV-829 JD ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Roshonda R. Wagner applied for Supplemental Security Income benefits in September 2009 on behalf of her young son, referred to in this action as LDR, alleging that he was disabled due to a variety of physical and mental impairments. On remand from a previous order by this Court, an administrative law judge found that LDR qualified as disabled beginning in August 2015, but not before. LDR filed this action seeking review of that decision to the extent it denied him benefits prior to August 2015. For the reasons below, the Court affirms the Commissioner's decision.

## I.  FACTUAL BACKGROUND

LDR's mother applied for SSI benefits on his behalf in September 2009, when he was about a year and a half old. Shortly after his birth, LDR began experiencing breathing problems. He was diagnosed with asthma, and also with disorders of his throat that later resolved on their own. LDR also began having problems with his ears, and was diagnosed with otitis media, an inflammatory disease of the middle ear, which may have also led to some speech and language delays. He was subsequently diagnosed with sleep apnea and a behavioral disorder as well.

In a decision issued in April 2012, an administrative law judge found that, while LDR did have severe conditions and was limited in various respects, he did not meet, medically equal, or functionally equal a listing, so he did not qualify as disabled. LDR filed suit seeking review of that decision, and this Court remanded the matter to the Commissioner, finding that the ALJ's decision failed to identify and offer reasons for the weight given to the various medical opinions in the record, which prevented the Court from meaningfully reviewing the decision. By that time, LDR's mother had filed another application on his behalf, so the two applications were consolidated. A new ALJ then held another hearing and considered all of the evidence to date.

In an extensive decision issued in August 2016, the ALJ found that LDR had become disabled by August 2015, around when he began the second grade. Thus, LDR was entitled to receive SSI benefits from that point forward. However, the ALJ also found that LDR did not qualify as disabled from the time of his September 2009 application through July 2015. Thus, he was not entitled to receive an award of back benefits for that period. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. LDR then filed this action seeking review of that decision to the extent it determined that he was not entitled to benefits prior to August 2015.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance."

*Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  DISCUSSION

Under Supplemental Security Income rules, a child is disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). This assessment requires a three-step analysis. 20 C.F.R. § 416.924(a); *Jelinek v. Astrue,* 662 F.3d 805, 809–10 (7th Cir. 2011).  At step one, if the child is engaged in substantial gainful activity, then he is not disabled. *Id.* At step two, if the

child does not have a severe medical impairment or combination of impairments, then he is not disabled. *Id*. At step three, a child will qualify as disabled only if his impairments "meet," "medically equal," or "functionally equal" any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The contested issue in this case is whether LDR functionally equaled any of the listings. To determine if a child's impairments are "functionally equivalent" to a listing, an ALJ analyzes their severity in six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006) (since children do not generally have work history, the structure of the disability program for them necessarily differs from that for adults, and focuses on the functioning of the child in specified areas of life activity). For a child to functionally equal a listing, the ALJ must find an "extreme" limitation in one domain or a "marked" limitation in two domains. 20 C.F.R. § 416.926a(a), (e)(2)(i).

Here, as to the period before August 2015, the ALJ concluded that LDR had "no limitation" in the domain of moving about and manipulating objects. As to the other five domains, the ALJ found that LDR did have various limitations, but that the severity of his limitations in each of those domains was "less than marked." Thus, LDR did not functionally equal a listing and did not qualify as disabled during that period. The ALJ further found, however, that based on LDR's worsening behavioral issues, his limitations in the domains of interacting and relating with others and caring for oneself became "marked" in August 2015, so he did qualify as disabled beginning at that time.

4

In seeking reversal of the ALJ's decision, LDR offers two lines of argument. First, he argues that governing statute and regulations violate the Constitution by allowing SSI benefits to be paid only from the time of an application for benefits, instead of allowing payments retroactive to the onset of a child's disability, if that occurred earlier. Thus, though his mother filed his application for benefits in September 2009, LDR argues that the ALJ should have considered whether he was disabled beginning in March 2008. Second, LDR offers a variety of arguments attacking the ALJ's finding that he did not become disabled until August 2015. For the reasons below, the Court does not find that the relevant statutes or regulations are unconstitutional, nor does it find that LDR has offered any basis for reversing the ALJ's decision, so the Court affirms the denial of benefits for that period.

**A.      Constitutionality**

LDR first argues that the statutes and regulations governing SSI benefits are unconstitutional because they do not allow for the retroactive payment of benefits for months prior to the claimant's application for benefits. LDR argues that this rule is unconstitutional as to the class of "disabled poor children," because those individuals are unable to act for themselves and their parents might not apply for benefits at the optimal time, which would leave them without benefits for a period when they might have otherwise been able to receive them. Thus, he argues that the ALJ should have determined whether he was disabled beginning in March 2008, when he was born, instead of beginning in September 2009, when his application for benefits was filed.

This argument is insubstantial. The rule against paying benefits for periods prior to an application does not discriminate against "disabled poor children." To the contrary, it applies equally to children and adults alike, as neither are eligible for benefits payments for months prior to their application. 42 U.S.C. § 1382(c)(7)(A). And SSI benefits are *only* available to those who

5

are poor and disabled (or aged or blind), so this rule does not discriminate *against* that class. There are good reasons for making benefits available only for months following an application, too. As the Commissioner notes, SSI benefits are means-tested on a monthly basis, meaning the amount of a claimant's payments can vary month-to-month based on the claimant's income and other circumstances. 42 U.S.C. § 1382(c). Looking back to periods before the application was even filed could present difficulties of proof or recollection as to those factors, and could create substantial administrative burdens to determine the proper amounts of those payments. In addition, the point of the SSI program is to provide money to help people meet their basic needs for food, clothing, and shelter. *Inman v. Shalala*, 30 F.3d 840, 841 (7th Cir. 1994) ("Congress created the SSI program to guarantee a minimum subsistence level for aged, blind, and disabled persons."). The rule at issue helps serve that purpose by incentivizing people to apply promptly so that they can begin receiving the monthly benefits to be put to that use—the Commissioner can't begin making payments if a person hasn't even applied yet, and a retroactive payment of benefits can't retroactively feed, clothe, or house a person. Thus, this rule easily passes the rational basis test.

The brunt of LDR's argument is that the rule is unfair to disabled poor children because their parents may fail or be unable to apply for benefits immediately when the children become eligible, and the children cannot fend for themselves, so they may be left in a greater degree of poverty than necessary, through no fault of their own. However, that is a policy argument left to Congress to consider. A statute is not unconstitutional or unlawful merely because it does not confer the greatest benefit possible. *Schweiker v. Wilson*, 450 U.S. 221, 230–38 (1981). LDR also suggests that the regulations on this point are arbitrary and capricious, but that argument is undeveloped, and as the Commissioner notes, the rule at issue is dictated by statute, not merely

by regulation. 42 U.S.C. § 1382(c)(7)(A). Accordingly, the Court does not find that the rule is unconstitutional or otherwise unlawful because it does not permit the retroactive payment of benefits for months prior to a claimant's application.

B.  **Review of the ALJ's Decision**

LDR also challenges the ALJ's conclusion that he did not qualify as disabled prior to August 2015. LDR does not address the ALJ's findings that he did not meet or medically equal a listing, but appears to argue that the ALJ erred in finding that he did not functionally equal a listing at step three. LDR begins by arguing that the evidence supported a finding of disability while he was in the age category of "newborns and young infants," which includes children up to the age of one. However, LDR fell in that category only until March 2009, and his application for benefits was not filed until September 2009. Thus, as just discussed, LDR was not eligible for benefits during this period and the ALJ had no reason to consider if LDR was disabled at that time.

LDR also challenges the ALJ's finding that he was not disabled from the date of his application in September 2009 through July 2015. During that time, LDR progressed through the categories of "older infants and toddlers" (ages 1 to 3), "pre-school children" (ages 3 to 6), and "school-age children" (ages 6 to 12). LDR first argues that the ALJ erred by failing to make separate findings as to each of these three age categories within each of the six domains. He argues that the regulations and rulings required the ALJ to articulate her findings separately for each age category within each domain, but he does not cite to any such regulation or ruling. The regulations do require an ALJ to evaluate a child's functioning as compared to other children their age, 20 C.F.R. §§ 416.926a(b), 416.924b, but nothing requires the ALJ to make separate findings within different age groups. To the contrary, the regulation only identifies the age categories for the purpose of offering examples of appropriate functioning at various ages; it

7

does not suggest that an ALJ must articulate her findings separately for each category. *Id.* § 416.926a(g)–(k). In addition, LDR does not argue that the ALJ did not actually consider his functioning in comparison to other children his age, as required—in a discussion spanning thirteen single-spaced pages, the ALJ discussed at length the examples of appropriate functioning at different ages within each of the six domains; discussed the evidence throughout the relevant periods; and explained her findings. (R. 553–66). That more than suffices to allow the Court to review the ALJ's decision, and LDR offers no reason why any further findings should be required.

Beyond that, LDR's arguments are cursory and undeveloped, and consist more of rearguing the evidence than of engaging the ALJ's findings and explaining how they were erroneous. The Court's role is to review the ALJ's decision and decide whether it is supported by substantial evidence; the Court is not permitted the reweigh the evidence or substitute its own judgment for that of the Commissioner, *Lopez*, 336 F.3d at 539, so arguments that simply recite evidence in the claimant's favor without grappling with the reasons offered by the ALJ do not present a basis for reversal.

LDR recites some of the evidence of his otitis media and asthma, but the ALJ discussed each of those conditions at length and addressed all of the evidence LDR cites. LDR does not attempt to identify any error in the ALJ's consideration of those conditions. LDR next argues that the ALJ understated the severity of his sleep apnea, but again, the ALJ discussed the relevant evidence and explained her findings as to that condition at considerable length, at multiple points in her decision. LDR's only response to the ALJ's analysis is that if, as the ALJ noted, his January 2012 surgeries improved his sleep apnea, then his sleep apnea must have been severe before then. However, the ALJ's decision exhaustively discussed the evidence of LDR's sleep

8

apnea from both before and after that time, and both identified the evidence in support of the ALJ's findings and confronted the evidence to the contrary, explaining why the ALJ gave that evidence reduced weight. (R. 543–44, 546, 548, 552, 562–63, 565).

In particular, the ALJ noted that while a 2011 sleep study reflected "moderate" sleep apnea, that same study showed that LDR had only "mildly reduced sleep efficiency," with "no other definite evidence of a sleep associated respiratory disturbance." (R. 290, 544). In addition, contrary to reports by LDR's mother that he snored excessively, clinical observations reflected only "mild snoring," and other reports denied any snoring. (R. 290, 437, 546, 1385). In other instances, the medical records reflect a denial of any sleep disorders. (R. 548, 1401, 1617). And as to the few references in LDR's school records that he had been tired or falling asleep, LDR had reported that he had stayed up late playing video games or going to a party, or that he had been experiencing a cough, suggesting that sleep apnea was not responsible for any impaired functioning in that regard. (R. 546, 548, 854, 857). LDR's brief does not acknowledge or attempt to identify any error in the ALJ's consideration of that evidence.

Finally, LDR argues that the ALJ's finding that he was not disabled before August 2015 is inconsistent with her finding that he was disabled after then, as his condition did not actually worsen. The ALJ adequately explained her reasoning for concluding that LDR became disabled in August 2015, though. In particular, she found that his behavioral problems worsened during the 2015–16 school year, while LDR was in the second grade, based on a February 2016 report from his teacher and other records from his school, among other materials. (R. 566–57). Those records showed that LDR was engaging in aggressive conduct towards his classmates and was being disruptive and disrespectful to his classmates and to adults. (E.g., 887, 889, 891, 893, 938, 946). Though previous reports reflected some similar conduct in previous years, the second-

grade teacher's report indicated much more significant limitations than were reflected in reports from previous years. (R. 816–23, 944–51). This behavior also prompted the school to seek a behavior consultation and request an assessment for an Individualized Education Program, which the school had not done based on any previous behavioral issues. (R. 511, 546, 567, 938). LDR's mother also testified before the ALJ that his behavioral problems became "a lot" worse in second grade. (R. 522–24, 551).

The ALJ found that this evidence supported "marked" limitations in the domains of interacting and relating to others and caring for personal needs starting at the beginning of that school year, as it showed a significant worsening of LDR's ability to get along with others and his ability to meet his mental needs to care for himself without behavior that is negative for himself and those around him. (R.567). The marked limitations in two domains meant that LDR qualified as disabled. LDR argues in response that his condition had not actually worsened, it just manifested itself differently. But the way in which the condition manifests itself into functional limitations is the central question in this analysis. And the ALJ's discussion of the evidence just noted adequately supports her conclusion that LDR's limitations worsened such that he became disabled in August 2015 despite not being disabled before that.

Accordingly, the Court finds that the ALJ's decision was supported by substantial evidence and that LDR has not presented any argument that would warrant remand. Therefore, the Court affirms the ALJ's finding that LDR did not qualify as disabled prior to August 1, 2015.

## IV.  CONCLUSION

For those reasons, the Court AFFIRMS the Commissioner's decision and DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED: February 7, 2018

                                      /s/ JON E. DEGUILIO
                              Judge
                              United States District Court